IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DIANE PIPPINS,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )            CASE NO. 3:18-cv-943-JTA
                                  )                     (WO)
ANDREW SAUL,                      )
Commissioner of Social Security,[1] )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

Pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), the claimant, Diane Pippins ("Pippins"), brings this action to review a final decision of the Commissioner of Social Security ("Commissioner"). (Doc. No. 1 at 1.)[2] The Commissioner denied Pippins' claim for a period of disability and for Disability Insurance Benefits ("DIB"). (*Id.*) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 6, 7.)

Based upon a review of the record and the briefs submitted by the parties, the Court finds that the decision of the Commissioner is due to be AFFIRMED.

---

[1] Andrew Saul is the current Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Nancy A. Berryhill, Acting Commissioner of Social Security, as the defendant in this lawsuit. No further action needs to be taken to continue this lawsuit pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.

[2] Document numbers, as they appear on the docket sheet, are designated as "Doc. No."

## I.    PROCEDURAL HISTORY AND FACTS

Pippins was 52 years old at the time of the alleged onset of disability, and 55 years old at the time of the hearing.  (R. 378.)[3]  She has a high school education and specialized job training in phlebotomy.  (R. 531.)   She has worked in the past as an accounting specialist and administrative assistant.  (*Id.*)  She alleges a disability onset date of April 6, 2014, due to herniated discs in her back, cervical radiculopathy, cervical disc degeneration, lumbar disc degeneration, lumbar radiculopathy, fibromyalgia, and pain in her right hip. (R. 530, 361.)

On October 22, 2014, Pippins filed an application for DIB based on disability under the Social Security Act, 42 U.S.C. §§ 401, *et seq.*  (R. 476.)  Her application was denied initially on February 19, 2015, and upon reconsideration that same day.   (R. 101.) Thereafter, Pippins filed a written request for a hearing on April 24, 2015.  (*Id.*)  A hearing was held before an Administrative Law Judge ("ALJ") on June 15, 2017, where Pippins appeared *pro se*.  (*Id.*)  The ALJ denied Pippins' request for benefits in a decision dated December 13, 2017.  (R. 98.)  Pippins filed an appeal and, on October 5, 2018, the Appeals Council denied Pippins' request for review.  (R. 1.)  Therefore, the hearing decision became the final decision of the Commissioner.  Subsequently, Pippins filed the instant action on November 2, 2018.  (Doc. No. 1.)

---

[3] Citations to the administrative record are consistent with the transcript of administrative proceedings filed in this case.  (*See* Doc. No. 15.)

## II.      STANDARD OF REVIEW

Judicial review of disability claims is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The Commissioner's factual findings are conclusive" when "supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   "Substantial evidence" is more than a mere scintilla and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1346, 1349 (11th Cir. 1997)).   Even if the Commissioner's decision is not supported by a preponderance of the evidence, the findings must be affirmed if they are supported by substantial evidence.  *Id*. at 1158-59; *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The court may not find new facts, reweigh evidence, or substitute its own judgment for that of the Commissioner.  *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 139 (11th Cir. 2019); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004); *Dyer*, 395 F.3d at 1210.  However, the Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III.      STANDARD FOR DETERMINING DISABILITY

An individual who files an application for Social Security Disability benefits must prove that she is disabled.  20 C.F.R. § 416.912(a)(1).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability under the Act is determined under a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The evaluation is made at the hearing conducted by the ALJ. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limit the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Absent such impairment, the claimant may not claim disability. *Id*. Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, then the claimant is declared disabled. 20 C.F.R. § 404.1520(d).

If the claimant has failed to establish that she is disabled at the third step, the ALJ may still find disability under the next two steps of the analysis. At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). The ALJ

4

must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(f).  If it is determined that the claimant is capable of performing past relevant work, then the claimant is not disabled.  20 C.F.R. § 404.1560(b)(3).  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(g)(1).  In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with her RFC, age, education, and work experience.  20 C.F.R. § 404.1560(c).  Here, the burden of proof shifts from the claimant to the ALJ in proving the existence of a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

## IV.   ADMINISTRATIVE DECISION

Within the structure of the sequential evaluation process, the ALJ made the following findings:

1. Pippins meets the insured status requirements of the Social Security Act through December 31, 2019.  (R. 103.)

2. Pippins has not engaged in substantial gainful activity since April 6, 2014, the alleged onset date.  (*Id.*)

3. Pippins has the following severe impairments: hypertension and lumbar and cervical spine radiculopathy.  (*Id.*)

4. Pippins does not have an impairment or combination of impairments that meets
   or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt.
   404, Subpt. P, App. 1.  (R. 105.)

5. Pippins has the RFC to perform sedentary work as defined in 20 C.F.R. §
   404.1567(a), except that she can occasionally climb stairs and ramps, balance,
   stoop, kneel, couch, and crawl.  Pippins cannot climb ladders, ropes, and
   scaffolds and cannot work at unprotected heights.  Pippins, while remaining at
   the workstation, needs to alternate to standing for two minutes every thirty
   minutes sitting, and needs to alternate to sitting for two minutes after every thirty
   minutes of standing or walking.  (R. 106.)

6. Pippins is capable of performing past relevant work as an accounting specialist.
   This work does not require the performance of work-related activities precluded
   by her RFC.  (R. 110.)

7. Pippins has not been under a disability, as defined in the Social Security Act,
   from April 6, 2014, through the date of the decision.  (*Id.*)

## V.   DISCUSSION

A. Application of Standard to Pippins

Based upon the ALJ's findings, Pippins survives the first two steps of the test because she is not engaged in "substantial gainful activity," and her conditions are "severe."  Pippins, however, did not survive the third step of the test because the ALJ determined that her impairments were not sufficiently severe to meet or medically equal the severity of any listed impairment set forth in the governing regulations.  The ALJ

continued his analysis to evaluate Pippins' functional limitations and determine whether the limitations are disabling.  The ALJ concluded that Pippins was capable of performing past relevant work and was not disabled.

B.  Proper Development of the Record

Pippins argues the ALJ failed to properly develop the record resulting in a breach of his duty to investigate all relevant facts.  (Doc. No. 13 at 7.)  She contends, because she was not represented by counsel during her hearing and the ALJ told her that he had requested updated medical reports because of unreported treatment in her file, the ALJ took on the responsibility of developing the record.  (*Id.*)  Pippins asserts that the ALJ did not receive complete records from her treating pain specialist, Dr. Kenneth Barngrover, which leaves a gap in the record spanning August 2014 through January 2016.  (*Id.* at 7-8.)  Pippins asserts she had received treatment from Dr. Barngrover on October 1, 2014, and May 14, 2015, and claims because the ALJ failed to obtain these treatment records, he did not develop a full and fair record.  (*Id.*)  Pippins also argues that the ALJ's alleged failure to properly develop the record means he also did not satisfy his duty "to investigate the facts and develop the arguments both for and against granting benefits" as required by the Supreme Court in *Sims v. Apfel*, 530 U.S. 103, 111 (2000).  (*Id.*)  Finally, Pippins states that the ALJ improperly used the "gap in treatment" to discredit her testimony.  (*Id.* at 9 (citing R. 108-09).)  Pippins concludes that the ALJ's failure to develop the record resulted in a breach of his duty to investigate all relevant facts and therefore the case should be remanded.  (*Id.*)

7

The Commissioner contends that the ALJ investigated all relevant facts and based his decision on an adequately developed record. (Doc. No. 14 at 4.) The Commissioner argues that the ALJ sufficiently developed the record by requesting and obtaining treatment records from Pippins' providers, including Dr. Barngrover. (*Id.*) The Commissioner contends Pippins has not proven that the two alleged visits are significant in any way. (*Id.* at 5.) The Commissioner further contends that if the ALJ did in fact err in development of the record, the error would be harmless because Pippins has failed to show evidentiary gaps that resulted in unfairness or clear prejudice. (*Id.* at 6 (citing *Graham*, 129 F.3d at 1423).)

In Social Security proceedings, "an individual who files an application for … disability benefits must prove that she is disabled." *Whetstone v. Barnhart*, 263 F. Supp. 2d 1318, 1320 (M.D. Ala. 2003) (citing 20 C.F.R. § 416.912 (1999)). These proceedings are inquisitorial rather than adversarial, which means an ALJ has the duty to investigate the facts and develop an argument both for and against granting benefits. *Sims*, 530 U.S. at 111. Thus, the ALJ is charged with developing a full and fair record. *Graham*, 129 F.3d at 1423; *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). *See also* 20 C.F.R. § 416.912(b) (stating that, before the ALJ determines the claimant is not disabled, "[the ALJ] will develop [the claimant's] complete medical history for at least the 12 months preceding the month in which [she] file[s her] application"). This duty exists whether or not the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007).

Where a claimant who has not waived her right to counsel is unrepresented, the responsibility of the ALJ to fully develop the record rises to a special duty. *Brown*, 44 F.3d at 934; *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982); *Graham*, 129 F.3d at 1423. This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Graham*, 129 F.3d at 1423 (citing *Cowart*, 662 F.2d at 735).

Pippins appears to argue that the "special duty" standard applies to the ALJ's development of the record. The Court disagrees. A claimant in Social Security proceedings may waive her right to counsel. *Smith*, 677 F.2d at 828. For the waiver to be valid, the claimant must be "properly apprised of [her] options concerning representation[.]" *Peppers v. Schweiker*, 654 F.2d 369, 371 (5th Cir. Unit B Aug. 1981).[4] "A claimant cannot knowingly and intelligently waive [her] statutory right to counsel when [she] is not adequately informed of it either in a prehearing notice or at [her] hearing." *Smith*, 677 F.2d at 828; *see also Reynolds v. Social Security Administration*, 679 F. App'x 826, 827-28 (11th Cir. 2017). In this case, Pippins waived her right to counsel. On June 15, 2017, she signed a Waiver of Right to Representation. (R. at 472.) By doing this she acknowledged her right to be represented and acknowledged that she "considered this matter and [ ] decided to waive [her] rights to such representation, and wish[es] to proceed

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

without a representative." (*Id.*)   Additionally, in the hearing that same day, Pippins reaffirmed her wish to proceed without counsel when asked by the ALJ if she still wished to waive her right to counsel.  (R. at 354.)  Pippins specifically stated "[s]ince … I'm here, I'd rather go ahead." (*Id.*)  The ALJ followed up by saying "if you want to proceed today without a representative, it's a request we're prepared to honor.  Is that what you want to do?" (*Id.*)  Pippins then replied with "yes sir." (*Id.* at 355.)  Pippins' signed waiver, coupled with her exchange with the ALJ, shows that she was properly apprised of her options concerning representation.  Her conversation with the ALJ about representation does not evidence confusion or belief that she did not have an absolute right to representation.  *See Peppers*, 654 F.2d at 371; *see also Brown*, 44 F.3d at 935.  Because Pippins signed the waiver and had a clear understanding of her right to representation, she made a "knowing and intelligent" waiver of her right to counsel.  *See Reynolds*, 679 F. App'x at 827-28.  Accordingly, the ALJ's responsibility to fully develop the record does not rise to a special duty.

In addition, the Court disagrees with Pippins that this matter should be remanded to the ALJ to further develop the record.  To warrant remand for the ALJ's failure to develop the record, there must be a showing of unfairness or clear prejudice.  *Brown*, 44 F.3d at 935 (citing *Kelly v. Heckler*, 761 F.2d 1538, 1540 n.2 (11th Cir. 1985)); *see also Bellew v. Acting Comm'r of Social Sec.*, 605 F. App'x 917, 932 (11th Cir. 2015) ("In determining whether remand is necessary for development of the record, we consider 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'") (citing *Brown*).

> Accordingly, "there must be a showing of prejudice before we will find that the claimant's right to such due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Id*. (internal quotation marks omitted). Before ordering a remand, we will review the administrative record as a whole to determine if it is inadequate or incomplete or "show[s] the kind of gaps in the evidence necessary to demonstrate prejudice." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (per curiam).

*Bellew*, 605 F. App'x at 932.

Here, as Pippins argues, there is a gap in the medical records from Dr. Barngrover. The full and fair record developed by the ALJ should be comprised of records for the twelve months preceding the date of the claimant's application. *Brown*, 44 F.3d at 934. Pippins applied for disability on October 22, 2014. (R. 476-477.) Thus, the ALJ's duty to develop a full and fair record applies to the twelve months from October 22, 2013 to October 22, 2014. The medical records from Dr. Barngrover of Southeast Regional Pain Center cover April 11, 2104 to August 29, 2014 and January 14, 2016 to May 8, 2017. (R. 635-657, 718-787.) There are no records from Dr. Barngrover which cover the gap in time between August 30, 2014 to January 13, 2016. Most importantly, there are no medical records from Dr. Barngrover which cover August 30, 2014 to October 22, 2014, which are nearly three months of the twelve months preceding the date of Pippins' application. This is notable since Pippins asserts that she visited Dr. Barngrover on October 1, 2014. (R. 513, 567.) Hence, there is an evidentiary gap in the medical records during the twelve months preceding Pippins' application.

Nonetheless, reviewing the administrative record as a whole, this evidentiary gap was harmless and did not result in unfairness or clear prejudice to Pippins. The ALJ's duty

to develop the record generally does not apply to records outside the twelve-month window prescribed by 20 C.F.R. § 416.912(b).  *See McCloud v. Barnhart,* 166 F. App'x. 410, 418 (11th Cir. 2006) (holding in part the ALJ did not err in failing to subpoena evidence alleged to exist outside the 12-month period and not included in the record, because the claimant is "in the best position to inform the ALJ as to [his] treatment history," and by failing to do so, [the] claimant did not meet [his] burden of production).  In this case, the ALJ informed Pippins at the hearing that he did not have any "recent records" or records "beyond early 2015" so he was requesting those records to "get a more recent picture."  (R. 355-356.) The ALJ then received records from Dr. Barngrover for January 14, 2016 to May 8, 2017, and considered those records in his determination of disability.  (R. 101.)  Thus, although the ALJ did not receive the medical records which covered August 30, 2014 to October 22, 2014, the ALJ fulfilled his duty by obtaining and reviewing Pippins' medical records from Dr. Barngrover which were beyond the twelve-month window.

Contrary to Pippins' argument, clear prejudice or unfairness is not shown by the ALJ's note of the "significant gaps in pain treatment" in his decision.  In his decision, the ALJ found that Pippins' "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ."  (R. 108).  The ALJ then proceeded to state five reasons as support for this finding, including as the third reason, that Pippins "had significant gaps in pain treatment . . . a break of around 18 months in pain treatments, from August of 2014 and until January of 2016 . . . [which] suggests that [her] symptoms may have been manageable even in the absence of any treatment."  (R. 108-109.)  The ALJ also relied on

<u>four</u> other reasons for his finding which are supported by the record, including Pippins'
employment for three years after her lumbar surgery, her ability to take care of most of her
daily activities and household activities, her inconsistent reports to different medical
providers, the evidence that her medical providers encouraged her to be more physically
active, and her consistent rejection of steroid injections for pain management.  (R. 108-
109.)  Had the ALJ relied solely on the alleged gap in treatment, Pippins may have been
able to demonstrate prejudice.  But that is not the case.  Because there is other medical
evidence that the ALJ relied on, including more recent information from Dr. Barngrover,
Pippins was not prejudiced by the gap in the medical records.  *See Bellew*, 605 F. App'x at
932-933 (explaining an ALJ's error in failing to fill an evidentiary gap is harmless and non-
prejudicial when such evidence would not change the disposition).  Accordingly, despite
the evidentiary gap in the record, the ALJ developed a full and fair record as there was
sufficient medical evidence in the existing record for the ALJ to make an informed
decision.  As there was substantial evidence to support the ALJ's decision without the gap
evidence, Pippins cannot show prejudice and remand is not warranted.

C. Properly Weighing a Doctor's Opinion

Pippins next argues that the ALJ failed to properly weigh Dr. Celtin Robertson's
opinion.  (Doc. No. 13 at 9.)  Specifically, she asserts that the ALJ does not adequately
explain why he rejected the portion of Dr. Robertson's opinion that addressed how long
she could sit.  (*Id.* at 11.)  Pippins argues the vocational expert testified that someone who
could only sit for four hours in an eight-hour workday could not perform "the full range or
[*sic*] light or sedentary work."  (*Id.* (citing R. 383-84.))  Pippins argues this case should be

"remanded for consideration of the maximum sitting limitations placed on [her] by Dr. Robertson." (*Id.*) She also argues that the ALJ's decision does not adequately address why he rejected the stooping restriction in Dr. Robertson's opinion. (*Id.*) Pippins asserts that the ALJ did not cite to any other part of the record to explain why he "limited [her] to only occasional stooping as opposed to never stooping or rarely stooping." (*Id.*) Finally, Pippins contends that the ALJ miscited the record by stating that Dr. Robertson's examination found that she "squatted without assistance" where it actually said, "squatted with assistance." (*Id.* at 12 (citing R. 105, 107, 661.))

The Commissioner contends that the ALJ did properly weigh Dr. Robertson's opinion. (Doc. No. 14 at 7.) He asserts that the ALJ's RFC finding is consistent with, and "actually more restrictive than," Dr. Robertson's opinion. (*Id.* (citing R. 106, 109, 662-63.)) The Commissioner argues that because the ALJ only gave some weight, not great or controlling weight, to Dr. Robertson's opinion, he was not required to adopt every facet of Dr. Robertson's recommendation. (*Id.*) The Commissioner also argues that even though Pippins believes the ALJ failed to show precisely how many hours she would be required to sit, Social Security Ruling (SSR) 96-9p explains that sedentary jobs generally require a total of six hours of sitting per eight-hour workday. (*Id.*) He contends that the ALJ found that Pippins had a greater ability to sit than Dr. Robertson concluded, but a lesser ability to walk or stand. (*Id.*) The Commissioner further contends that the record supports the ALJ's RFC finding because Pippins' physicians recommended that she perform increased activities of daily living and consistently noted that her pain medication regimen was effective in controlling her pain. (*Id.* at 8 (internal citations omitted).) The Commissioner

concludes by asserting that Dr. Robertson based his opinion on Pippins' subjective reports of pain during examination, but the ALJ properly discounted those subjective symptoms as being inconsistent with the record.  (*Id.* (citing R. 662, 108-09.))  The Commissioner argues that Dr. Robertson's own examination notes were consistent with the ALJ's RFC findings.  (*Id.* (citing R. 107, 661-62.))

In her reply brief, Pippins concedes that the ALJ is not required to adopt any physician's opinion.  (Doc. No. 19 at 3.)  However, she reasserts that the ALJ has a duty to "state with particularity the weight he gives to different medical opinions and the reasons why."  (*Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).)  Pippins argues that the ALJ's decision does not explain why Dr. Robertson's opinion regarding the stooping restriction was rejected.  (*Id.*)  She contends Dr. Robertson's opinion in this instance was not based on anything subjective, but on her difficulty with forward flexion. Pippins concludes that the ALJ's decision does not provide adequate reasoning as to why he found she was only occasionally limited in stooping.

The ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor."  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986); *see also Castro v. Acting Comm'r of Soc. Sec.*, 783 F. App'x 948, 955 (11th Cir. 2019); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Generally, a treating doctor's opinion is entitled to more weight than one from a consulting doctor. *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019).  The report of a consulting physician who examined claimant once does not constitute substantial evidence upon the record as a

whole, especially when contradicted by the evaluation of a claimant's treating physician. *Kent v. Sullivan*, 788 F. Supp. 541, 544 (N.D. Ala. 1992) (citing *Hancock v. Secretary of Dept. of H.E.W.*, 603 F.2d 739, 740 (8th Cir. 1979)).   Additionally, the opinion of a one-time examiner is not entitled to deference.  *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020). While an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," he is required to state "with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006).  Although the opinion of an examining physician is generally entitled to greater weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Huntley v. Soc. Sec. Admin., Comm.*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)).

Here, substantial evidence supports the weight and reasoning that the ALJ gave to the medical opinion of Dr. Robertson.  First, Dr. Robertson is a consultative examiner, thus his opinion is not controlling and is not entitled to deference.  *See McSwain,* 814 F.2d at 619.  Second, the ALJ did state the particular weight that he gave to Dr. Robertson's opinion.  In his decision, the ALJ stated "[a]s for the opinion evidence, the undersigned assigns some weight to the opinion of the consultative examiner[.]"  (R. at 109.)  Third, the reasoning set forth by the ALJ is adequate to explain the weight he gave to Dr. Robertson. After stating the weight given to the opinion of Dr. Robertson, the ALJ explained that he found Pippins could occasionally stoop because she had "lumbar spine surgery in 2011 and

has difficulty with forward flexion[.]"   (*Id.*)   Later, the ALJ stated "[t]he nature of [Pippins'] treatments, and findings made during the course of treatment, and [her] own testimony and statements about the activities of daily living do not support a more restrictive finding."   (*Id.* at 109-10.)   The ALJ's referencing of other parts of the record provided sufficient reasoning to show why he gave some weight to Dr. Robertson's opinion as "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."   *Huntley*, 683 F. App'x at 832.   Accordingly, the weight the ALJ gave to Dr. Robertson's opinion is supported by substantial evidence.

### D.  Properly Assessing Pain and Other Symptoms

Pippins contends that the ALJ failed to properly assess her pain and other symptoms. (Doc. No. 13 at 12.)   Specifically, she argues that the ALJ's analysis of the second prong of the pain standard does not meet the substantial evidence standard.   (*Id.*)   Pippins asserts that while she sometimes performs light household chores, she also has a hard time carrying out those and other chores depending on the day, and that she sometimes delays certain tasks because of her pain.   (*Id.* at 13 (citing R. at 366-70.))   She further contends that, based on Eleventh Circuit precedent, her testimony regarding her household chores does not render her testimony regarding pain and other symptoms invalid.   (*Id.* (*see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).)   Next, Pippins argues that the ALJ's reliance on lack of complaints of pain to her urologist is inappropriate because a "reasonable person likely would not discuss medical complaints that do not pertain to that specialists' [*sic.*] expertise."   (*Id.*)   She also asserts that the ALJ again relied on gaps in pain treatment which did not exist.   (*Id.*)   Additionally, Pippins avers that the ALJ's reliance

on her medical providers' recommendations that she be more physically active was not proper. (*Id.*) She specifically states that Dr. Barngrover's repeated recommendation to "be as active as possible within limitations" did not include a definition of those limitations. (*Id.* (internal citations omitted).) According to Pippins, no inference should be drawn from these recommendations because they could be interpreted multiple ways without further clarification. (*Id.*) Finally, Pippins contends that the ALJ should not have relied on her refusal to get steroid injections while she was on other medications because she could have refused the injections for reasons other than her pain was adequately managed under her medication regimen. (*Id.* at 14.)

The Commissioner argues the ALJ properly evaluated Pippins' subjective complaints pursuant to the proper regulations and Eleventh Circuit precedent. (Doc. No. 14 at 9 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)).) He asserts, as the ALJ found, that Pippins' complaints of disabling intensity, persistence, and limiting effect were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* (citing R. at 108).) The Commissioner also highlights that Pippins gave inconsistent statements to her medical providers. (*Id.*) Next, the Commissioner argues that Pippins' reported daily activities are not consistent with her reports of disabling subjective symptoms. (*Id.* at 10.) Additionally, he asserts that Pippins' disinterest in pursuing additional treatment suggests her pain was not as severe as alleged. (*Id.* at 10-11.)

When determining whether a claimant is disabled, the ALJ considers "all [ ] symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). "A claimant may establish that she has a disability through her 'own testimony of pain or other subjective symptoms.'" *Tredik v. Comm'r of Soc. Sec.*, 826 F. App'x 840, 849 (11th Cir. 2020) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). To establish disability based on pain, a claimant "must show: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.

If it is determined that a claimant has an impairment that could be reasonably expected to produce pain, the ALJ must then evaluate "the intensity and persistence of [the claimant's] symptoms so that [she] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. § 404.1529(c)(1). During this evaluation, the ALJ will "consider all of the available evidence from [the claimant's] medical sources and nonmedical sources about how [ ] symptoms affect [the claimant]." *Id.* "After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will

be reviewed for substantial evidence." *Hollingsworth v. Comm'r of Soc. Sec.*, --- F. App'x

---, No. 20-11678, 2021 WL 406914, at \*2 (11th Cir. Feb. 5, 2021) (citing *Marbury v.*

*Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)).   The ALJ must adequately articulate his

reasons if he discredits subjective testimony.   *Marbury*, 957 F.2d at 839; *Dyer*, 395 F.3d at

1210.   The ALJ "need not cite 'particular phrases or formulations[,]'" but he is required to

cite enough to "enable [the court] to conclude that [he] considered [the claimant's] medical

condition as a whole."   *Chatham*, 764 F. App'x at 868 (*quoting Dyer*, 395 F.3d at 1210).

When evaluating subjective symptoms, the ALJ must consider factors which include a

claimant's daily activities; location, duration, frequency, and intensity of claimant's pain;

precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of

any medication a claimant takes or has taken to alleviate pain; any measures a claimant

uses to relieve the pain; and other factors concerning functional limitations and restrictions

due to pain.   20 C.F.R. § 404.1529(c)(3)(i)-(vii).   "The fact a claimant can perform daily

activities that are inconsistent with her subjective symptom complaints does not constitute

substantial evidence where there is other evidence indicating her daily activities have been

significantly affected by her condition."   *Hollingsworth*, 2021 WL 406914, at \*2 (citing

*Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)); *see also Tredik*, 826 F. App'x at

849.   That being said, "a claimant's activities may show her pain or other symptoms are

not as limiting as alleged."   *Hollingsworth*, 2021 WL 406914, at \*2 (citing 20 C.F.R. §

404.1529(c)(3)(i)).   Still, credibility determinations are the province of the ALJ, and "we

will not disturb a clearly articulated credibility finding supported by substantial evidence."

*Tredik*, 826 F. App'x at 849 (citing *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014)).

Here, the ALJ's assessment of Pippins' pain and other symptoms is supported by substantial evidence.  First, the ALJ considered the appropriate factors when he was assessing her subjective pain.  He considered Pippins' daily activities, her statement that she was in substantial pain throughout the workday, her reports to medical providers, her choices of medication, and the suggestions given to her by medical providers.  (R. at 108-09.)  None of these considerations employed by the ALJ were inappropriate based on relevant case law and regulations.  *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *see also Robinson v. Acting Comm'r of Soc. Sec.*, 766 F. App'x 811, 816-17 (11th Cir. 2019).

Second, the ALJ did not rely solely on the fact that Pippins was sometimes able to engage in household chores.  He also considered her work history post-lumbar surgery, her inconsistent reports of pain to different medical providers, the suggestions of those medical providers, and her choice of pain treatment.  (R. at 108-09.)  While an ability to engage in daily activities is not substantial evidence when there are other examples where the claimant struggles with those daily activities (*see Foote*, 67 F.3d at 1561), it is noteworthy that "a claimant's activities may show her pain or other symptoms are not as limiting as alleged."  *Hollingsworth*, 2021 WL 406914, at *2 (citing 20 C.F.R. § 404.1529(c)(3)(i).)  The ALJ in this case did not rely solely on Pippins' ability to achieve daily tasks.  Because the ALJ considered other factors, including Pippins' ability to complete activities as a factor and not as substantial evidence *per se*, and cited grounds other than Pippins' ability

21

to complete daily tasks as to why he did not think her subjective complaints of pain were consistent with other evidence, this part of his analysis was supported by substantial evidence.

Third, the ALJ's consideration of Pippins' report to her urologist is also appropriate. Although Pippins argues that a reasonable person would not tell their urologist that she was suffering from back pain, the ALJ is entitled to determine the credibility of complaints of subjective pain. *See Mitchell*, 771 F.3d at 782. In this part of his analysis, the ALJ noted the inconsistencies in Pippins' statements to one medical provider as opposed to another. (R. at 108.) Pippins told her urologist that she was not suffering from back pain while telling other providers that "she was suffering from generalized pain 100% of the time." (*Id.* (citing Ex. 5F/3 at R. 690, Ex. 6F at R. 718-87, Ex. 6F/38 at R. 755)). Because the ALJ is entitled to determinations of credibility, he can support his findings of inconsistency with this type of reasoning. The ALJ is not determining whether a reasonable person would tell her urologist about her persistent back pain, but whether Pippins' allegations of pain are credible. Here, the medical records showing Pippins' inconsistent statements of pain to medical providers constitutes substantial evidence. Further, the medical records support the ALJ's reliance on Dr. Barngrover's recommendation to Pippins to be more physically active. Because the ALJ is entitled to determinations of credibility, he can compare Pippins' subjective complaints with the recommendations of her medical provider. Even if Dr. Barngrover did not put limitations on the recommended activity, the ALJ can still cite to the recommendation itself because it "serves to show that the claimant's reports of

her functional limitations are self-reported and are not entirely shared by her medical providers." (R. at 109.)

Fourth, the ALJ's reliance on the nonexistent gap in treatment is not the only reasoning employed by the ALJ. Because he relied on the other reasons mentioned above, his reliance on the gap is not prejudicial toward Pippins.

Fifth, the ALJ's reliance on Pippins' refusal to take steroid injections for her back pain was appropriate. Under 20 C.F.R. § 404.1529(c)(3)(i)-(vii), the ALJ can consider medication used to treat the symptoms and any other measures used to relieve the symptoms, in addition to other factors concerning functional limitations and restrictions due to pain. *See Robinson*, 766 F. App'x at 816. Additionally, the ALJ is entitled to make determinations of credibility. *Mitchell*, 771 F.3d at 782. Thus, even if Pippins decided not to take the injections for reasons other than her pain being manageable without them, the ALJ is entitled to his determination if it is supported by the record. The ALJ reasoned that Pippins' declining the steroid treatment "shows that her symptoms were sufficiently controlled with the existing medication regimen[.]" (R. at 109.) This is appropriate because the ALJ is entitled to his determination based on record evidence.

Here, the ALJ gave adequate reasons as to why he made his determination of Pippins' subjective symptoms. (R. at 108-09.) Because the ALJ gave valid reasons as to why he discredited Pippins' subjective allegations, his determination is based on substantial evidence. *See Tredik*, 826 F. App'x at 849 (citing *Mitchell*, 771 F.3d at 782).

E.  Basis of Residual Functional Capacity

Pippins finally contends that the ALJ's finding of her residual functional capacity is not based on substantial evidence.  (Doc. No. 13 at 14.)  She argues that the ALJ's finding is less restrictive than the only medical opinion in the record.  (*Id.* at 15.)  Additionally, she states that because the ALJ did not address her maximum ability to sit, misquoted the record regarding her ability to squat, and failed to properly evaluate how her pain would affect her ability to concentrate, the RFC finding is not based on substantial evidence and the case should be remanded.  (*Id.*)

The Commissioner argues that the ALJ's RFC determination is based on substantial evidence.  (Doc. No. 14 at 12.)  He points to the evidence that the ALJ relied on when making his RFC determination, which included medical recommendations to continue taking her medication and perform increased activities of daily living, house work, and walking (R. 107, 607, 653-54, 723); Dr. Robertson's multiple determinations concerning her ability to move and the effectiveness of her medications (R. 107-08, 643-48, 721-87); and her rejection of steroid injection treatments (R. 107-08, 726, 746, 751, 756, 761).  (Doc. No. 14 at 12.)  The Commissioner concluded by noting that Pippins did not take blood pressure medicine to treat her hypertension and did not report any complications caused by her hypertension.  (*Id.* at 13.)

When evaluating a claimant's RFC, the ALJ will "consider the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [he] receive[s]." 20 C.F.R. § 404.1527(b).  On certain issues, opinions by medical providers are not medical

opinions, but opinions on issues reserved to the Commissioner.  20 C.F.R. § 404.1527(d).

One of these issues is the claimant's RFC. 20 C.F.R. § 404.1527(d)(2) ("Although we

consider opinions from medical sources on issues such as . . . your residual functional

capacity . . . the final responsibility for deciding these issues is reserved to the

Commissioner.")  Thus, the ALJ must ultimately make the disability determination based

on social security law.  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 940 (11th Cir.

2011).  If the ALJ's determination of the claimant's RFC is supported by substantial

evidence, then the court cannot overturn the conclusion reached by the ALJ.  *Shue v.

Comm'r of Soc. Sec.*, 817 F. App'x 906, 908 (11th Cir. 2020) (citing *Moore v. Barnhart*,

405 F.3d 1208, 1211 (11th Cir. 2005)); *see also* 42 U.S.C. § 405(g).  Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support a

conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Phillips v. Barnhart*, 357 F.3d 1232,

1240 n.8 (11th Cir. 2004); *see also Raices v. Comm'r of Soc. Sec.*, 805 F. App'x 836, 838

(11th Cir. 2020).

　　　　Here, the ALJ's RFC determination is based on substantial evidence.  Even if the

ALJ's finding is less restrictive than the only medical opinion on the record, the RFC

determination is within his discretion.  This means he is not entirely bound by the opinion

of a medical provider if his determination is supported by substantial evidence.  *See Shue*,

817 F. App'x at 908.  This is also the case regarding Pippins' maximum ability to sit,

misquoting the record regarding her ability to squat, and failing to properly evaluate how

her pain would affect her ability to concentrate.  (*See* Doc. No. 13 at 14.)  In his decision,

the ALJ pointed to a sizeable amount of evidence to support his RFC determination. Specifically, he pointed to Pippins' lack of complications from hypertension (R. at 107); her adequate management of her pain as stated by her physicians (*id.*); the normal appearance of her spine (*id.*); her negative test for sciatica and the motor strength of her upper and lower extremity (*id.*); her refusal to take steroid injections (*id.* at 107-08); her ability to accomplish daily tasks (*id.* at 108); her inconsistent statements to medical providers (*id.*); and the advice of her physicians to be more physically active (*id.* at 108-09). Even if the ALJ could have reached a different conclusion, it is not the court's place to identify and enforce that alternate conclusion. *See Bloodsworth*, 703 F.2d at 1239. Here, the evidence is such that a reasonable person could reach the same conclusion as the ALJ. The recommendations of Pippins' physicians, combined with the lack of complications, the results of certain tests, and her ability to engage in various activities is enough evidence to support the ALJ's conclusion. Therefore, the RFC determination is supported by substantial evidence.

## VI.   CONCLUSION

After review of the administrative record, and considering all of Pippins' arguments, the Court finds the Commissioner's decision to deny her disability is supported by substantial evidence and in accordance with the applicable law. Accordingly, it is hereby

ORDERED that the decision of the ALJ is **AFFIRMED**.

A separate judgment will be issued.

DONE this 10th day of May, 2021.

JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE